219 N.J. Super. 103 (1987)
529 A.2d 1047
TRI-STATE METRO NATURISTS, INDIVIDUALLY AND ON BEHALF OF ALL SIMILARLY SITUATED CITIZENS, PLAINTIFF,
v.
TOWNSHIP OF LOWER, ROBERT R. FOTHERGILL, M.M. "PEGGIE" BIEBERBACH, ROBERT F. CONROY JR., PHILLIS GENOVESE, AND EDWARD YATES, DEFENDANTS.
Superior Court of New Jersey, Law Division.
March 11, 1987.
*105 Joel Wayne Garber for plaintiff (Joel Wayne Garber and Mark S. Guralnick, attorneys).
Louis C. Dwyer Jr. for defendants (Corino & Dwyer, attorneys).
George P. Cook, Dep. Atty. Gen. for State of New Jersey, Dept. of Law & Public Safety, Environmental Protection Section, Intervenor (W. Cary Edwards, Atty. Gen.).

OPINION
GIBSON, J.S.C.
By this action plaintiff seeks to invalidate an ordinance that bars nude sunbathing on the beaches of Lower Township, New Jersey. The initial challenge is on constitutional grounds, plaintiff claiming that the ordinance impermissibly restricts freedom *106 of expression, the right to privacy, freedom of association and certain undefined but constitutionally protected liberties. Although the challenge to this ordinance is broad-based, since the particular beach being used by plaintiff's members is part of a state-owned wildlife preserve, plaintiff also claims that the Township lacks jurisdiction to enforce the ordinance at that site. With respect to that portion of the challenge, plaintiff is joined by the State of New Jersey as intervenor. With one exception, all parties agree that the material facts are not in dispute and that this case can be decided based on the stipulated facts, trial briefs and oral argument. The following represents the judgment of this court.[1]

FINDINGS OF FACT
Plaintiff, Tri-State Metro Naturists (hereinafter Tri-State) is an unincorporated organization whose members advocate and practice a so-called "clothing-optional lifestyle." Their activities include nude bathing and sunbathing as well as lobbying, informational dissemination and furnishing legal counsel where needed. The organization serves members in New Jersey, New York and Connecticut. For many years several of Tri-State's members have engaged in nude sunbathing on a stretch of beach in Lower Township, New Jersey known as Higbee Beach. For some, the practice has gone on more or less uninterrupted for almost two decades. During the last two or three years, however, the Township has arrested several of plaintiff's members and charged them with violations of the State Obscenity Laws. N.J.S.A. 2C:14-4. Although convictions resulted, they were reversed on appeal based on the conclusion that nudity alone did not constitute lewdness under the State Criminal Code. The Township then enacted Ordinance No. 86-15 (July 21, 1986) which, among other things, makes it unlawful for any person to appear or travel on any street, beach or other public *107 place in the Township in a state of nudity. Members of plaintiff organization continued to sunbathe nude and on July 27, 1986 Township police arrested certain of them and charged them with a violation of the ordinance. Plaintiff then initiated this suit.
The site of the nude sunbathing is a portion of a state-owned wildlife preserve known as Higbee Beach. Higbee Beach consists of approximately 200 acres of generally undeveloped land boardering on Delaware Bay along the southerly most tip of Cape May County. That property was purchased by the State of New Jersey in 1978, following which a Management Plan was adopted by the Department of Environmental Protection and implemented through the Division of Fish, Game and Wildlife. The Management Plan reflects the "growing number of outdoor enthusiasts" that visit the area and the "increasing popularity with such tourists as a free beach and place of quiet solitude." Pursuant to N.J.S.A. 13:8A-25 regulations were promulgated covering a wide variety of subjects, the primary purpose of which was to preserve wildlife but which included the management of human conduct as well, including recreational activities. N.J.A.C. 7:25-2.20. The recreational activity covered by the regulations is extensive and includes birdwatching, picnicking and bathing. No prohibition exists, however, with respect to nude bathing or sunbathing. See N.J.A.C. 7:25-2.9.
One of the characteristics of Higbee Beach that became an item of dispute between the parties and the one fact which could not be stipulated was whether it was secluded. Since that fact had a potential impact on certain of the constitutional issues raised, the court was asked to resolve that dispute based on a site inspection. Having completed the inspection, it is this court's conclusion that the area can clearly be labeled as secluded. There is only one road that leads into Higbee Beach and the area is not easily accessible through neighboring property. It is not a place that one would stumble upon by accident. On the other hand, it is clearly open to the public and is used by *108 a large number of people. The fact that it is remote and secluded, therefore, does not mean that it is private or out of public view. Although no specific proofs were presented with respect to how many people visit the area, studies done by the State as part of its Management Plan support the conclusion that the number is substantial. Those studies include traffic counts during different periods and show that in 1985, for example, approximately 56,000 people visited Higbee Beach. Although that specific number is not critical to the court's findings, judicial notice may be taken of the studies generally to support the factual conclusion that the area is visited by a large number of people who engage in a variety of activities. Evid.R. 9(2)(a). It is undisputed that the members of Tri-State represent a small percentage of the total.

LEGAL CONCLUSIONS
Two general areas require examination in order to resolve the legal issues raised by plaintiff's challenge. The first involves a variety of constitutional claims; the second deals with principles of state sovereignty. Since plaintiff's constitutional claims, if successful, impact on the enforceability of the ordinance in areas beyond Higbee Beach, those issues will be examined first.

A. CONSTITUTIONAL CLAIMS

(1) Freedom of Expression
Plaintiff argues that nude sunbathing is constitutionally protected under both the Federal and State Constitutions.[2] Its initial claim is that governmental efforts to preclude it, such as this ordinance, violate the freedom of expression protected by the First and the Fourteenth Amendments to the United States *109 Constitution. Plaintiff's argument is that because its members are part of an organization which has chosen a clothing-optional lifestyle their practice of nude sunbathing represents a form of passive expression that cannot be the subject of a total ban. No case has been cited that supports this argument. In fact, those cases that have addressed the subject suggest the contrary. As noted in Williams v. Hathaway, 400 F. Supp. 122, 126 (D.C.Mass. 1975), there is little in plaintiff's conduct that merits First Amendment protection. While there may be an element of nonverbal expression inherent in nude sunbathing, its communicative character is not sufficiently distinct to warrant constitutional protection. It is more akin to wearing one's hair long. See Richards v. Thurston, 424 F.2d 1281 (1st Cir.1970); Ibid. Both acts are "fundamentally individualistic and personal rather than expressive or communicative." Williams v. Hathaway, 400 F. Supp. at 126.
In affirming Williams the Court of Appeals made the following observation:
The distinction must be made between groups concerned with discussing and promoting a pleasurable activity, and those gatherings of those people merely desiring to pursue that activity where it can take place. [Williams v. Kleppe, 539 F.2d 803, 806, n. 9 (1st Cir.1976).]
Other federal decisions are to the same effect. See, e.g., Erznoznik v. Jacksonville, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975), involving freedom of expression and nudity on a publicly visible drive-in movie screen; see also, Richards v. Thurston, where the First Circuit noted that "the right to appear au naturel at home is relinquished when one sets foot on a public sidewalk." 424 F.2d at 1285.
Nudity, of course, is not in itself obscene. Erznoznik v Jacksonville, 422 U.S. at 215, 95 S.Ct. at 2275. When combined with other forms of expression such as nude dancing, for example, it may be protected as a form of expression. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); Schad v. Mt. Ephraim, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981); Trombetta v. Atlantic City, 181 N.J. Super. *110 203 (Law Div. 1981) aff'd 187 N.J. Super. 351 (App.Div. 1982). No such combination is asserted here. Simply put, there is no support for the notion that nude sunbathing, by itself, is a form of speech protected by the First Amendment. Plaintiff's argument in this regard is therefore rejected. See generally, Chapin v. Southampton, 457 F. Supp. 1170, 1173-1174 (E.D.N.Y. 1978).

(2) Right to Privacy
Plaintiff claims that the social nudism which its members practice is a family affair. The naturists bring their wives, children and relatives. Plaintiff then argues that since the rights of parents to control the upbringing and education of their children extends to activities occurring in public, Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), governmental efforts to control dress violate their right to privacy. What is at stake, however, is not the rights of the naturists to control the upbringing or education of their children, whether in public or otherwise; what is at stake is the right to appear nude in public. As already observed, the weight of federal authority supports the conclusion that public nudity can be banned. Erznoznik v. Jacksonville; Richards v. Thurston.
The right of an individual to appear nude in his own home or in an otherwise private setting is not questioned. It is when such conduct occurs in public that it runs afoul of the moral views and sensibilities of others. The essential difference is not the site of the nudity but the privacy of the act and its capacity to offend others. Chapin v. Southampton, 457 F. Supp. at 1174. Nor can this court accept plaintiff's position that sunbathing on Higbee Beach is a private act. As previously noted, that site is open to the public and frequented by large members of the public. As for the other beaches in Lower Township, the public quality of the beaches is beyond dispute.

*111 (3) Freedom of Association
Plaintiff next argues that Lower Township's Ordinance violates the constitutional right to free association. Clearly the First Amendment protects the right of nudists to associate with one another and to advocate and promote their views. On the other hand, no authority has been advanced to support the notion that a gathering of nudists in public converts what is otherwise permissibly banned activity into protected association. As already noted in Williams v. Kleppe, a distinction must be made between the association of peoples concerned with discussing and promoting a pleasurable activity and those gatherings of people merely desiring to pursue that activity where it can take place. 539 F.2d at 806, fn. 9. Stated differently, the desire of a group to sunbathe nude does not, by itself, create a constitutional right in that group to associate nude on a public beach. Chapin v. Southampton, 457 F. Supp. at 1175. This court rejects, therefore, plaintiff's argument that nude sunbathing is a protected form of association.

(4) Vagueness
The next argument is that the Ordinance is void for vagueness and thus violative of the due process clause of the Fourteenth Amendment of the United State Constitution. The essence of this argument is that the ordinance does not give a person of ordinary intelligence fair notice of the nature of the prohibited conduct. See, e.g., Papachristou v. Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); State v. Monteleone, 36 N.J. 93, 99 (1961); U.S. Const., Amend. XIV. It is appropriate at this point to recite in full the pertinent portions of the challenged ordinance. Section 1 of Ordinance No. 86-15 reads as follows:
SECTION I. Section IV of Ordinance 65-6 is hereby amended and supplemented to read as follows:

Indecent or nude exposure. It shall be unlawful for any person to appear or travel on any street, avenue, highway, road, boardwalk, beach, beach front or waterway, located in the Township of Lower, or appear in any public place, store or business in said Borough in a state of nudity, or in an indecent or lewd *112 dress or garment, or to make any indecent or unnecessary exposure of his or her person.
Although certain portions of this ordinance are arguably vague, particularly with respect to dress, there is nothing vague about the prohibition against public nudity. Indeed, an ordinance containing this exact language was already reviewed by our Appellate Division and found to be constitutional in Belmar v. Buckley, 187 N.J. Super. 107, 112-113 (App.Div. 1982). At issue in Belmar was whether a proscription against "indecent or unnecessary exposure" would unmistakably apprise a person of ordinary intelligence that topless sunbathing on a public beach by a female adult lying on her back would be prohibited. In concluding that it would, the court acknowledged that such a conclusion might not be justified in other societies having different mores or customs. However, the applicability of such a prohibition to the conduct involved there and in that societal context was considered beyond reasonable debate. Id. at 113. Plaintiffs have suggested that Belmar v. Buckley is bad law but even if that were true, this court does not have the option of disregarding it. In any event, this court does not agree that it is bad law. See Chapin v. Southampton, 457 F. Supp. at 1176; Parker v. Levy, 417 U.S. 733, 753-58, 94 S.Ct. 2547, 2560-63, 41 L.Ed.2d 439 (1974).

(5) Nudity as a Protected Liberty
The final constitutional argument advanced by plaintiff is that nude sunbathing is a constitutionally protected liberty recognized under the due process clause of the Fifth and Fourteenth Amendments. Williams v. Hathaway. In asserting this right plaintiff recognizes that such a liberty, assuming its existence, is subject to reasonable intrusion in furtherance of a legitimate governmental interest. Richards v. Thurston. Plaintiff argues, however, that Lower Township lacks such an interest. Unlike the previous constitutional arguments advanced, *113 this particular claim is supported by a trial level Federal case. Williams v. Hathaway.
At issue in Williams was the right of the Federal Park Service to regulate nude bathing in an area of beach known as Brush Hollow located on the Atlantic Shore of Cape Cod in Massachusetts. According to the factual findings by the court, for some 40 or 50 years, a spot considered "hidden" and out of the public eye, had been used by individuals, couples and small groups for skinny dipping. Apparently, neither the municipality in which the site was located nor the State sought to suppress that activity. Even after the creation of a park the National Park Service failed to take action until the mid-1970's when large numbers of the public began to use the site. After discussing and rejecting a number of constitutional claims similar to those advanced here, the court found that plaintiffs had a "personal liberty right, protected by the Constitution, to bath in the nude at Brush Hollow." Id. at 127. The court reasoned that the concept of "liberty" was protected by the due process clause of the Fifth Amendment and that what was established through that clause was a "sphere of personal liberty for every individual, subject to reasonable intrusions by the (government) in furtherance of legitimate (governmental) interests." Williams v. Hathaway, 400 F. Supp. at 127.
Basically the court was articulating the fundamental right of people to be let alone by the government with respect to those activities that may be deemed uniquely personal. Although this court can readily support that concept, that is not to say that such a concept can fairly be applied to nude sunbathing in public. The nature of the personal liberty that may exist in nude sunbathing changes dramatically when the activity takes on a public quality. Simply put, the activity, when public, is no longer "uniquely personal", impacting as it does on the sensibility of others. Relating these concepts to the facts here, it must be remembered that Higbee Beach, although secluded, is open to the public and frequented by a *114 substantial number of people. It is unconvincing, therefore, for plaintiff to argue that the members of Tri-State have selected a spot which is certain to be private. Higbee Beach is not private. Undoubtedly there are times when there is no one else around, but it cannot be said to be private. It may be that there are a number of places in addition to one's home which would fairly be considered private and therefore legitimate sites for practicing nudity. However, the beaches of Lower Township, including Higbee Beach, are not among them.
There are other reasons for distinguishing the holding in Williams. As previously indicated, Brush Hollow had been "held out" as a nude beach for several decades. For almost 50 years various governmental authorities had acquiesced in the utilization of the beach as a site for nude bathing so that the nudists had reasonably come to expect that they could utilize that area without interference. That characterization cannot fairly be applied to Higbee Beach. Although the evidence on this question may be incomplete, given plaintiff's burden, this court cannot conclude that Lower Township, once being aware of the activity, acquiesced in allowing this area to be used for nude sunbathing.
Those distinctions aside, it is also clear that when the Court of Appeals reviewed the Williams case, the concept of a constitutionally protected liberty supporting nude sunbathing did not receive the support extended by the trial court. Although acknowledging the "significant debate" as to whether nude sunbathing should be accorded substantive constitutional protection, the Court of Appeals concluded that it need not decide that question. Instead, the court was willing to assume for purposes of its ruling that appellant's interests should be afforded some measure of constitutional protection since it was clear that the State had demonstrated an overriding interest supporting its regulations which outweighed any claimed constitutional protection. If this court follows that same approach the Township ordinance should be similarly upheld.
*115 One begins such an examination with a recognition of the strong presumption of validity in favor of this ordinance. Although that presumption is not irrefutable, the law imposes a "heavy burden" on the person seeking to overturn it. Hutton Pk. Gardens v. West Orange Town Council, 68 N.J. 543, 564 (1975). The challenger must prove by clear evidence that there has been a "transgression of constitutional limitation or the bounds of reason." Tp. of Little Falls v. Husni, 139 N.J. Super. 74, 80 (App.Div. 1976). No such showing has been made here. Lower Township clearly has a legitimate basis for banning public nudity. Erznoznick v. Jacksonville, 422 U.S. 205, 95 S.Ct. 2268. Such a ban embraces within it the concept fairly held that public nudity runs afoul of the current mores of a majority of the community. That is not to say that the Township can preclude all forms of nudity; nor does support for this ordinance suggest that there is anything immoral about nudity in itself. The critical distinction lies with the public nature of the activity. It is when naturists by their actions impose their choice on others that generally accepted standards are offended. Under the circumstances, therefore, even if there is a constitutionally protected liberty to sunbathe nude in public, a sufficiently legitimate state interest has been demonstrated by Lower Township to justify the regulations this Ordinance contains.

(6) State Preemption
Aside from the constitutional arguments, plaintiff also claims that Lower Township's Ordinance is invalid because of state preemption. N.J.S.A. 2C:14-4. However, that argument has already been dealt with and rejected in Belmar v. Buckley. Although it is true that no local governmental unit can enact or enforce an ordinance which conflicts with or is preempted by the state law, as the court in Buckley observed the legislative history of the State Criminal Code makes it clear that its purpose was not to address indecent behavior broadly, but rather to prohibit only that conduct which constituted a form of *116 sexual aggression. N.J.S.A. 2C:14-4. Indeed the commentary to the final report on that legislation acknowledges that it was not intended to "reach debatable brevity of attire on the beaches" since it was aimed at lewdness rather than indecency. Control of dress, if desirable, was to be accomplished by regulatory ordinances outside the scope of the Code. Belmar v. Buckley, 187 N.J. Super. at 111.

B. STATE SOVEREIGNTY
The final and most compelling argument advanced by plaintiff is one that challenges the enforceability of the ordinance on the basis that the site of the nude sunbathing is on state-owned lands. As noted, plaintiff is joined on this point by the State of New Jersey. Briefly stated, the issue to be resolved is whether, absent state consent or waiver, a municipality may lawfully exercise its police power to regulate conduct inside state-owned lands located within its boundaries. It is this court's conclusion that the answer is no. Implicated here is the broad notion of state sovereignty and the principle that the state is the paramount governmental authority with regard to the regulation and control of activity within its territorial boundary. See generally, 5 McQuillan, Municipal Corporations § 15.31a (rev. 3d ed. 1981).
The fact that municipalities are a creature of the state and have no powers other than those delegated to them is beyond dispute. Included within that principle is the notion that the state, in creating a municipality, may withhold whatever powers it may choose. These concepts go beyond the doctrine of preemption. Although legislative intent is implicated whether one is dealing with preemption or sovereignty, under the latter doctrine there is no duality of control and the power of the state is exclusive. Principles of sovereignty require that the state and its agents, when performing a governmental function, be free of local control. Accordingly, a municipal ordinance will not be effective with respect to state property unless the state *117 chooses to make it so. McQuillan, Municipal Corporations, supra; see generally, Kentucky Education Institution for Blind v. Louisville, 123 Ky. 767, 97 S.W. 402 (1906).
The principle is that the state, when creating municipal governments, does not cede to them any control of the state's property situated within them, nor over any property which the state has authorized another body or power to control ... (H)ow can the city have ever a superior authority to the state over the latter's own property, or in its control and management? From the nature of things it cannot have. [123 Ky. 767, 97 S.W. 402, 404 (1906).]
Although no case has been discovered that applies these principles in a setting such as the one before this court, the concept of state immunity from local control has long found support in New Jersey. Hill v. Bor. of Collingswood, 9 N.J. 369, 375 (1952); Aviation Services v. Bd. of Adj. of Hanover Tp., 20 N.J. 275, 282 (1956); Springfield Tp. v. New Jersey Highway Dept, 91 N.J. Super. 567, 573 (Law Div. 1966); Rutgers v. Piluso, 60 N.J. 142, 152-153 (1972). Cases from other jurisdictions are in accord. Cty. of West Chester v. Village of Mamaroneck, 255 N.Y.S.2d 290, 22 A.D.2d 143 (N.Y. App. Div. 1964); Board of Regents of Universities, etc. v. Tempe, 88 Ariz. 299, 311, 356 P.2d 399, 406 (1960); Kentucky Education Inst. for Blind v. Louisville. Although the circumstances in which these principles have most frequently been applied involved questions of zoning, other types of regulatory activities have also been implicated; examples include limitations on Sunday sales, Hill v. Bor. of Collingswood, and restrictions against public nuisances, Springfield Tp. v. New Jersey Highway Dep't.
In Aviation Services v. Bd. of Adj. of Hanover Tp., the Supreme Court held that where immunity from local zoning regulations is claimed by an agency or authority which occupies a superior position in the governmental hierachy, the presumption is that such immunity was intended by the Legislature, absent express statutory language to the contrary. Id. 20 N.J. at 282. The same principles were invoked earlier in Hill v. Bor. of Collingswood to uphold a County Park Commission which had *118 agreed to lease part of its property as a club house and tennis court in violation of a local zoning ordinance. The Commission's immunity from local control was also held to include the ability of its lessee to sell food on Sunday.
The legislature has provided for the establishment of county park systems and governance under autonomous bodies in terms that clearly exclude the divisive control claimed by the municipality here. By explicit provision, the police power delegated to the municipality for use zoning and the regulation of merchandising may not be exerted within the area of special jurisdiction assigned to the park authority. [Id. 9 N.J. at 375.]
In applying this rule specifically to the sale of food the Court held that the jurisdiction of the park authority was "exclusive." Id. at 376. Although it did not speak in terms of "sovereign" immunity, it is clear that this is the principle which provides the foundation for the Court's holding.
Similar immunities were applied to a subcontractor of the State Highway Department in connection with a road building project on Route 78 in Springfield Tp. v. New Jersey Highway Dep't. In that case utilization of the "sovereign immunity" label was explicit. Id. 91 N.J. Super. at 575 and 577. Springfield Township had claimed that a contractor doing the highway work was creating a nuisance but the court held that the cite of the alleged nuisance was a "state enclave which was outside the jurisdiction of the local Board of Health." Ibid.; Cf. Shell Oil Co. v. Hanover Tp. Bd. of Adj., 38 N.J. 403 (1962).
The Supreme Court reexamined these principles in Rutgers v. Piluso, supra, and although retreating somewhat from some of the broad pronouncements characteristic of the earlier decisions, it nevertheless underscored the basic concepts. As noted there:
The rationale which runs through our cases and which we are convinced should furnish the true test of immunity in the first instance, albeit a somewhat nebulous one, is the legislative intent in this regard with respect to the particular agency or function involved. [Id. 60 N.J. at 152.]
The Court held that there are a variety of factors which potentially come into play in such a determination, including the *119 nature and scope of the instrumentality seeking immunity, the kind of land use involved, the extent of the public interest to be served and the effect local land use regulations would have upon the state or its agency. Id. at 153. It was also noted that immunity will not always be automatic; nor is it unbridled. For example, it may not be exercised in an unreasonable fashion to arbitrarily override important legitimate local interests.
Applying these principles to the case at bar one must note at the outset that Higbee Beach is not only state-owned but is also the subject of broad regulations promulgated by the Department of Environmental Protection, N.J.S.A. 23:2A-5. These regulations are enforced through the Division of Fish, Game and Wildlife, N.J.A.C. 7:25-1.1 et seq., and cover a variety of topics including not only control over access by the public but the permissable recreational uses of the site as well. Included are controls with respect to vehicular traffic, alcoholic beverages, outboard motors, horseback riding and swimming. N.J.A.C. 7:25-2.9. Notably absent is any regulation regarding bathing or sunbathing in the nude. Given the state-ownership of Higbee Beach and its broad regulation of the area, principles of state sovereignty and immunity support the conclusion that Lower Township may not impose its local controls at that site. Hill v. Bor. of Collingswood; Rutgers v. Piluso. Stated differently, the various factors present here support the conclusion that the Legislature would not have intended that the Division of Fish, Game and Wildlife  an instrumentality of the state performing an essential governmental function for the benefit of all  be subject to local control in its management of this sensitive area.
In reaching this conclusion one must confront the logical jump between restrictions on local controls that impact directly on a state agency, such as those involved in Rutgers v. Piluso, and those that purport to control the conduct of private citizens who visit the site. One could argue, for example, that Lower Township's attempt to restrict nudity on Higbee Beach does not *120 present any direct conflict with the state goals of protecting the sensitive environmental features of that area. On the other hand, principles of sovereignty do not rest simply on the notion of conflict or the lack thereof; they are more a matter of the superior power of the state and its exclusive right to exercise that power within its own property. That power is not without its limits, as already noted, but such limitations speak to the reasonableness of the state action as opposed to simply whether they conflict with local regulations. Nor does such an analysis preclude recognition of a legitimate local interest. Certainly Lower Township has the ability to seek an amendment to the state regulations that would incorporate the standards now contained in its ordinance. Indeed, this Court has been advised that the State will be entertaining just such an amendment in the upcoming months.
Finally, it must be recognized that the judgment reached here does not mean that visitors to Higbee Beach are insulated from the law. Nor are controls contained in the various regulations promulgated by the Department of Environmental Protection the only "law" applicable. All parties agree that the public does not insulate itself from the law simply because it is on Higbee Beach. Obviously the State Criminal Code applies; so does every other state law. Indeed, such laws are enforceable not only by the representatives of the state but the local officials as well. See N.J.S.A. 40A:14-152.1.

CONCLUSION
In sum, it is the judgment of this court that Ordinance No. 86-15, although sufficient to withstand the constitutional challenges asserted, is generally enforceable in Lower Township but may not be enforced within Higbee Beach. That site is state-owned and regulated and therefore immune from local control under state sovereignty grounds. Given this ruling, the arrests previously made under this ordinance and directed toward certain of plaintiff's members cannot stand and will be *121 dismissed. A permanent injunction will also be entered restraining Lower Township from the enforcement of this ordinance on Higbee Beach.
NOTES
[1] This opinion represents a formalization of the judgment rendered from the bench on December 18, 1986.
[2] Although both Federal and State constitutional protections were invoked, plaintiff made no effort to distinguish the two or to cite any New Jersey provisions. This Court has therefore referred only to Federal authorities.