775 A.2d 551 (2001)
341 N.J. Super. 407
STATE of New Jersey, Plaintiff-Respondent,
v.
Arlene E. VOGT, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 14, 2001.
Decided June 25, 2001.
*552 Frank L. Corrado, Jr., Wildwood, argued the cause for appellant, (Rossi, Barry, Corrado, Grassi & Radell, attorneys; Mr. Corrado, of counsel and on the brief).
Steven D. Scherzer Atlantic City, argued the cause for respondent, (Cooper, Perskie, April Niedelman, Wagenheim & Levenson, attorneys; Mr. Scherzer and Michael Gross, co-counsel and on the brief).
Before Judges NEWMAN, BRAITHWAITE and WELLS.
The opinion of the court was delivered by WELLS, J.A.D.
Defendant, Arlene Vogt, appeals from her conviction of "nudity in a public place" in violation of Lower Township Ordinance 3-2.6 in its Municipal Court. Arlene was again convicted upon her de novo appeal to the Law Division, Atlantic County, pursuant to R. 3:23-1. She was sentenced to pay a fine of $500 of which $450 was suspended, together with $30 in costs. The conduct for which Vogt was convicted consisted essentially of appearing topless on a public bathing beach known as Higbee *553 Beach in Lower Township, Cape May County.
We note that Arlene Vogt's appeal to the Law Division was consolidated with that of her husband, William Vogt, who was convicted for conduct in violation of the Fish & Game Laws, which occurred on another part of Higbee Beach. Both appeals were argued together, both in the Law Division and here. Our opinion in William's case, which involves issues not implicated in Arlene's appeal, will be handed down separately.
Ordinance 3-2.6, upon which Arlene was convicted, states:

Indecent or Nude Exposure. It shall be unlawful for any person to appear or travel on any street, avenue, highway, road, boardwalk, beach, beach front or waterway located in the Township of Lower, or to appear in any public place, store or business in said borough in a state of nudity or in an indecent or lewd dress or garment, or to make any indecent or unnecessary exposure of his or her person.
The evidence introduced before the municipal judge was neither complicated nor in dispute. The State's only witness at the municipal court trial was the arresting officer, Officer Martin Biersbach. According to his testimony, on August 7, 1999, at about 4:10 p.m., he was walking with binoculars on Higbee Beach, trying to find nude people to charge with violating the public-nudity ordinance. Through his binoculars he spotted what appeared to be two men in bathing suits, but as he approached he saw that one was a woman, defendant Arlene; the man with her was her husband, William. Also in the area was "a camera man from a news channel."
Seeing that Arlene was not wearing a top, Biersbach asked her for identification; after she identified herself, he advised her that she was in violation of the public-nudity ordinance. She asked for a summons because "she wanted to address it in court." He gave her a summons citing the number of the ordinance and describing the offense as "Nudity in Public Place." He did not cite William. Arlene was on the state-owned portion of Higbee Beach; in the companion appeal, William appeared nude on the federally owned portion.
Arlene chose not to testify. On her behalf William testified that when his wife was cited by Biersbach, she insisted that she was not "nude" because she was wearing a bathing suit bottom. William had been sunbathing nude on Higbee Beach since 1979. As the beach was well known as a destination for nudists, no one was ever alarmed at seeing nudity there. William examined pictures of men's breasts introduced into evidence by Arlene, opining that some men's breasts were larger than women's breasts. William admitted that Arlene was topless at the time and that she was aware of the ordinance. William professed that, in his opinion, the ordinance was vague.
When asked by the judge if she had anything to say before sentencing, Arlene responded: "It's my first offense, so I would ask that you be lenient, and it was done as a test case simply to try to get nudity back at Higbee's Beach, or at least a portion of it. And the police department was informed of the action I was going to take that day."
Because to some extent we plow old ground in this case, we pause briefly to set forth the historical and legal context in which the issues arise. Both the Municipal Judge and the Law Division relied extensively on this history in considering the issues raised by Vogt. Higbee Beach has historically been the situs of public nude sunbathing. In Tri-State Metro Naturists v. Lower Tp., 219 N.J.Super. *554 103, 107-108, 529 A.2d 1047 (Law Div. 1987), Judge Gibson described the beach:
The site of the nude sunbathing is a portion of a state-owned wildlife preserve known as Higbee Beach. Higbee Beach consists of approximately 200 acres of generally undeveloped land bordering on Delaware Bay along the southerly most tip of Cape May County. That property was purchased by the State of New Jersey in 1978, following which a Management Plan was adopted by the Department of Environmental Protection and implemented through the Division of Fish, Game and Wildlife. The Management Plan reflects the "growing number of outdoor enthusiasts" that visit the area and the "increasing popularity with such tourists as a free beach and place of quiet solitude." Pursuant to N.J.S.A. 13:8A-25 regulations were promulgated covering a wide variety of subjects, the primary purpose of which was to preserve wildlife but which included the management of human conduct as well, including recreational activities. N.J.A.C. 7:25-2.20. The recreational activity covered by the regulations is extensive and includes birdwatching, picnicking and bathing. No prohibition exists, however, with respect to nude bathing or sunbathing. See N.J.A.C. 7:25-2.9.
[T]he area can clearly be labeled as secluded. There is only one road that leads into Higbee Beach and the area is not easily accessible through neighboring property. It is not a place that one would stumble upon by accident. On the other hand, it is clearly open to the public and is used by a large number of people. The fact that it is remote and secluded, therefore, does not mean that it is private or out of public view.
Prior to Tri-State, we had decided a case which challenged the right of another township to limit nude bathing. In Borough of Belmar v. Buckley, 187 N.J.Super. 107, 453 A.2d 910 (App.Div.1982) the proscriptive language of the ordinance in question was identical to that in this case. The defendant was convicted on evidence that she was sunbathing on a public beach while wearing only the bottom of her bikini. On appeal to the Law Division, the court acquitted her on the ground that enforcement of the ordinance was preempted by the State lewdness statute. We reversed on the preemptive ground and remanded for a trial de novo on the merits. Id. at 112-13, 453 A.2d 910. Although the trial court had not reached the defendant's vagueness argument, we chose to dispose of it:
[W]e are satisfied that the ordinance in this respect met constitutional muster since it gave a person of ordinary intelligence fair notice of the nature of the prohibited conduct. See, e.g., Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); State v. Monteleone, 36 N.J. 93, 99, 175 A.2d 207 (1961).
The meaning of portions of the ordinance may be debatable. Nevertheless, we have no doubt that the proscription against "indecent or unnecessary exposure" of the person would unmistakably apprize persons of ordinary intelligence that topless sunbathing on a public beach in the summertime by a female adult lying on her back is prohibited. We recognize that that might not be so in other societies having different mores and customs, but the import and applicability of the prohibition to the conduct here in this societal context is beyond reasonable debate.

[Ibid. (footnote omitted).]
We observed that, pending the appeal, Belmar amended the ordinance to add a sentence defining "state of nudity" to include, *555 among other things, complete exposure of the female breasts. Id. at 112 n. 3, 453 A.2d 910. We commented:
While the amendment is obviously more exact and explicit than the ordinance pursuant to which defendant was convicted, the question is not whether the original ordinance could have been more precisely phrased but only whether it was adequately phrased to give reasonable notice of the nature of the prohibited conduct.

[Ibid.]
In Tri-State, an organization of nudists sued to invalidate the same ordinance as involved here which was adopted in 1986 by Lower Township to ban nude sunbathing. The suit was prompted by the fact that several of the plaintiff's members had been arrested under the ordinance on Higbee Beach.
Judge Gibson rejected the plaintiff's various constitutional challenges, including those based on the freedom of expression, right to privacy, freedom of association, vagueness, and protected liberty interest. Tri-State Metro Naturists, supra, 219 N.J.Super. at 108-15, 529 A.2d 1047. In refuting the vagueness theory, the judge adopted the reasoning of Belmar. Id. at 112, 453 A.2d 910. While conceding that "certain portions of this ordinance are arguably vague, particularly with respect to dress," the judge reaffirmed the Belmar court's view that "there is nothing vague about the prohibition against public nudity." Ibid.
Notwithstanding its upholding of the validity of the ordinance, the court held that the ordinance could not be enforced on Higbee Beach, a site that "is state-owned and regulated and therefore immune from local control under state sovereignty grounds." The latter obstacle to enforcement has been removed by L.1999, c. 141, effective June 28, 1999, by which the Legislature amended N.J.S.A. 40:48-1(9) to allow municipalities to enforce ordinances prohibiting nudity on state-owned lands.
In the present case before the Municipal Court, the Law Division and here, Arlene raised four issues which we paraphrase: (1) The ordinance is unconstitutionally vague on its face and as applied to her; (2) the ordinance denies equal protection under the Fourteenth Amendment to the United States Constitution because it distinguishes legal and illegal conduct on the basis of gender; (3) the ordinance denies equal protection under Art. 1, para. 1 of the State Constitution because the individual rights it affects outweigh the asserted governmental interests it serves; and (4) given the historical pedigree of nude sunbathing at Higbee Beach, the application of the ordinance violates the "public trust" doctrine.

I.
In a comprehensive written opinion Judge Garofolo resolved each of these issues against Arlene. With respect to the claim that the ordinance is vague he relied on both Belmar and Tri-State, concluding that both had dealt with the issue and determining that the ordinances in those cases were virtually identical to the present Lower Township ordinance. The wording "gave a person of ordinary intelligence fair notice of the nature of the prohibited conduct." Belmar, supra, 187 N.J.Super. at 112, 453 A.2d 910. "[T]here is nothing vague about the prohibition against public nudity." Ibid. Thus, "as applied" to Arlene, he ruled the ordinance was not vague.
We agree. It is ludicrous, as Judge Garofolo stated, to argue that toplessness does not constitute nudity within the meaning of the ordinance. Arlene notes that the ordinance does not define "state of *556 nudity," leaving her on August 7, 1999, to speculate as to whether her partial nakedness would violate the ordinance. Thus while we consider the argument settled by both Belmar and Tri-State to lay to rest any remaining vestige of doubt we hold that the ordinance is not vague as applied to the partial nudity of a topless female sunbather.
The distinction Arlene argues fails both under the strict reading of the words of the ordinance and under the circumstances surrounding her flouting of the ordinance. First, the ordinance forbids appearing in public in "a state of nudity." While toplessness is not the complete nudity that defendant assumes is necessary, it is "a" state of nudity, namely, partial nudity in the form of bare female breasts. Arlene makes much of the fact that her dictionary does not define nudity or nakedness to include partial nudity or toplessness. But the unabridged version of the same dictionary, Webster's International Dictionary 1500 (3rd ed.1981), defines "naked," a synonym of "nude," as including the following: "inadequately or partially clothed esp. so as to be socially unacceptable." Applying that definition, a Missouri appeals court rejected a child-pornography defendant's argument that his victim was not "nude" because she was missing only her top when he photographed her. State v. Foster, 838 S.W.2d 60, 68 (Mo.App.1992), cert. denied, 507 U.S. 994, 113 S.Ct. 1607, 123 L. Ed.2d 169 (1993).
Similarly, the Iowa Supreme Court disapproved a defendant's argument that he had no fair warning that his photographing his topless daughter would constitute "nudity" under the governing statute. State v. Hunter, 550 N.W.2d 460 (Iowa 1996), overruled on other grounds by State v. Robinson, 618 N.W.2d 306 (Iowa 2000). The court reasoned:
A statutory term provides fair warning if the meaning of the word "is to be fairly ascertainable by reference to similar statutes, prior judicial determinations, reference to the dictionary, or if the questioned words have a common and generally accepted meaning." State v. Kueny, 215 N.W.2d 215, 217 (Iowa 1974). The common meaning of the word "nudity" includes exposure of the breasts, buttocks or genitalia.

[Id. at 465.]
Referring to the same dictionary definition embraced in Foster, supra, the Hunter court concluded: "The common meaning of `nudity' does not require total nakedness." Ibid.
Not only does the Lower Township ordinance forbid nudity, but it also bans appearing in public in "an indecent or lewd dress or garment" or being in a state of "indecent or unnecessary exposure." Arlene was familiar with the ordinance beforehand, and she invited her own prosecution by informing the police that she would be testing the ordinance on the day in question. Thus she cannot persuasively profess to be uncertain whether the ordinance would apply to baring her breasts in public. She had to know that her conduct would violate at least one, if not all of the three categories: even if she were not "nude," she certainly was dressed in an "indecent" garment or engaged in "indecent or unnecessary exposure."
We further conclude that Arlene has no standing to make a facial attack on the ordinance. We harken to our recent analysis of the approach to facial invalidity arguments in State v. Saunders, 302 N.J.Super. 509, 517, 695 A.2d 722, certif. denied, 151 N.J. 470, 700 A.2d 881 (1997). That approach was, in turn, based upon Village of Hoffman Estates v. Flipside, Hoffman Estates Inc., 455 U.S. 489, 494-95, *557 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362, 369 (1982).
The first, and here, the only necessary step is to determine whether the ordinance reaches a substantial amount of constitutionally protected conduct. We hold that it does not.
This question has been answered uniformly in the negative: there is no constitutional right for a woman to appear topless on a public beach. The only New Jersey case is the Law Division opinion in Tri-State, supra, 219 N.J.Super. at 108-115, 529 A.2d 1047, in which the court reviewed the federal case law holding that nude sunbathing does not implicate either the First Amendment, the right to privacy, or a protected liberty interest. For example, in Chapin v. Town of Southampton, 457 F.Supp. 1170 (E.D.N.Y.1978), the court upheld an ordinance forbidding nudity on beach areas and in adjacent waters. The court reasoned that nude bathing in itself lacks any communicative value that might call for First Amendment protection. Id. at 1173-74. Nor does it implicate the right of privacy or the right to be left alone: one does not have "a right to impose one's lifestyle on others who have an equal right to be left alone." Id. at 1175. Accord. South Florida Free Beaches, Inc., v. City of Miami, 734 F.2d 608, 610 (11th Cir.1984), (upholding ban on nude sunbathing on public beach, which enjoyed no constitutional protection).
The nude-sunbathing cases derive their authority in large part from the United States Supreme Court's pronouncements that public nudity is not safeguarded by the Constitution. See, e.g., Erznoznik v. City of Jacksonville, 422 U.S. 205, 212 n. 7, 95 S.Ct. 2268, 2274 n. 7, 45 L. Ed.2d 125, 132 n. 7 (1975). Because the ordinance is not over-broad and implicates no constitutionally protected conduct and because we have concurred with the trial judge that Arlene's conduct clearly falls within the proscribed behavior, she cannot be heard to complain that the ordinance may be vague as applied to the conduct of others.

II.
Arlene argues that Lower's ordinance as applied to topless women but not men creates an invidious discrimination on the basis of gender in violation of both the federal and state constitutional guarantees of equal protection. Judge Garofolo held:
Protecting the public sensibilities is an important governmental interest based on an indisputable difference between the sexes. Further, the prohibition against females baring their breasts in public, although not offensive to everyone, as shown by the testimony of all three witnesses in this case, is still seen by society as unpalatable. Therefore, the ordinance does not violate the Equal Protection Clause of the Fourteenth Amendment.
We agree. Restrictions on exposure of the female breast are supported by the important governmental interest in safeguarding the public's moral sensibilities, and this ordinance is substantially related to that interest. Hence the ordinance satisfies both the federal and state tests for equal protection.
A gender-based distinction challenged under the Equal Protection Clause of the United States Constitution is gauged by the so-called "intermediate" level of scrutiny: the distinction must be justified by an important governmental interest that is substantially accomplished by the challenged discriminatory means. United States v. Morrison, 529 U.S. 598, 620, 120 S.Ct. 1740, 1755, 146 L. Ed.2d 658, 678 (2000); Greenberg v. Kimmelman, 99 N.J. 552, 565, 494 A.2d 294 (1985); B.C. v. Cumberland Reg'l Sch. Dist., 220 N.J.Super. *558 214, 223, 531 A.2d 1059 (App.Div. 1987). The burden of justifying the classification is on the state, which must show that the claimed justification is "exceedingly persuasive." United States v. Virginia, 518 U.S. 515, 533, 116 S.Ct. 2264, 2275, 135 L. Ed.2d 735, 751 (1996).
This issue has been litigated often elsewhere, the overwhelming majority of cases holding that laws banning female (but not male) toplessness do not violate federal or state equal protection guidelines. See generally Kimberly J. Winbush, Annotation, Regulation of Exposure of Female, But Not Male, Breasts, 67 A.L.R. 5th 431, 453-57 (1999). The leading case is Craft v. Hodel, 683 F.Supp. 289 (D.Mass.1988), in which the court upheld against various constitutional attacks a National Park Service regulation barring public nudity within the Cape Cod National Seashore. That regulation expressly listed among its prohibitions the exposure of the "female breast." Id. at 290 n. 1. In rejecting the equal protection challenge, the court observed that the regulation had an important governmental objectiveto protect the public's sensibilitiesan objective based not on unreasonable cultural stereotypes but rather on a real "physical difference between the sexes which has implications for the moral and aesthetic sensitivities of a substantial majority of the country." Id. at 300. The Equal Protection Clause, cautioned the court, does not demand that things that are different in fact be treated the same in law, nor that a state pretend that there are no physiological differences between men and women. Ibid.
Moreover, reasoned the court, the regulation satisfied the second part of the analysis: the distinction between men's and women's breasts was substantially related to the valid state objective, in that current community standards deemed male-breast exposure on a public beach to be acceptable and female-breast exposure to be offensive. Id. at 300-01.
In this light it is also not just the size of the breast exposed that is at the heart of the male-female distinction. Indeed, while one could infer from the photographs admitted at trial some men are more full breasted than some women, it is the public sensitivity in the case of women which is at stake.
Similarly, in United States v. Biocic, 928 F.2d 112 (4th Cir.1991), the court upheld an ordinance forbidding "the showing of the female breast" in public. The court justified the alleged discrimination against females as follows:
The important government interest is the widely recognized one of protecting the moral sensibilities of that substantial segment of society that still does not want to be exposed willy-nilly to public displays of various portions of their fellow citizens' anatomies that traditionally in this society have been regarded as erogenous zones. These still include (whether justifiably or not in the eyes of all) the female, but not the male, breast.

[Id. at 115-16 (footnote omitted).]
Arlene cites one case in support of her position. People v. Santorelli, 80 N.Y.2d 875, 587 N.Y.S.2d 601, 600 N.E.2d 232 (1992). The language that Arlene embraces is from the concurring opinion. The majority opinion expressly declined to reach the equal-protection challenge, in view of its holding that the ban on nudity did not apply to the facts of that case. We, therefore, do not deem the concurrence an authoritative expression of the current state of the law.
Arlene also claims that the United States Supreme Court in 1996 undermined the precedential value of cases such as Craft and Biocic because it "enhanced the *559 level of constitutional scrutiny due gender based classifications" by demanding that the state's justification be "exceedingly persuasive". Virginia, supra, 518 U.S. at 515, 116 S.Ct. 2264. Our reading does not confirm that argument. The Court applied the traditional intermediate scrutiny test but added that the State must make an "exceedingly persuasive" showing that the test has been satisfied. Id. at 532-33, 116 S.Ct. 2264. In his concurring opinion in that case, Chief Justice Rehnquist lamented the majority's confusing use of the "exceedingly persuasive" phrase, and he offered his clarification that the "phrase is best confined, as it was first used, as an observation on the difficulty of meeting the applicable test, not as a formulation of the test itself." Id. at 559, 116 S.Ct. 2264, (Rehnquist, C.J., concurring). Furthermore, in Morrison, supra, 529 U.S. at 620, 120 S.Ct. 1740, the Court reaffirmed the traditional test for assessing gender-based classification. In any event, we find the State's position with respect to the difference between the exposure of the female breast and that of the male breast exceedingly persuasive.

III.
Arlene's state equal protection theory derives from Article I, paragraph one of the State Constitution:
"All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness."
In assessing an equal-protection argument under that clause, our courts apply "a balancing test: whether there is an appropriate governmental interest that is suitably furthered by the differential treatment." In re Charter School Application of Englewood on Palisades Charter School, 320 N.J.Super. 174, 237, 727 A.2d 15 (App.Div.1999), aff'd, 164 N.J. 316, 753 A.2d 687 (2000). Our courts strike the balance according to three factors: "the nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction." Ibid., quoting Greenberg, supra, 99 N.J. at 567, 494 A.2d 294. The more personal or fundamental the right, "the greater the public need must be to justify governmental interference with the exercise of that right." George Harms Const. Co., v. N.J. Turnpike Auth., 137 N.J. 8, 29, 644 A.2d 76 (1994).
Arlene observes, correctly, that "the protection afforded by the state constitution's equal protection component can be broader than that afforded by its federal analogue." She insists that the broader protection is appropriate here, because (1) the right she asserts "is personal rather than economic," (2) the ordinance's prohibition is "absolute" as to females and fails to accommodate the unique history of Higbee Beach, and (3) the State failed to prove a "public need" for "so draconian an interference" with defendant's right to go topless.
Judge Garofolo held with respect to this argument:
It appears that the defendant is arguing that she has a right to walk around without a top on. She ignores the societal mores and customs recognized by numerous courts that have dealt with this exact issue. See e.g., Tri-State Metro, supra; Belmar, supra; Biocic, supra, Hodel, supra. The ordinance does not fully prohibit an individual from going topless, but rather restricts the prohibition to those public areas where public sensitivities can and would be offended. *560 The judge also invoked Judge Gibson's reaction to the same ordinance in Tri-State, supra, 219 N.J.Super. at 115, 529 A.2d 1047, to the effect that whatever personal right one has to be nude, that right becomes subject to government regulation when one seeks to exercise it in public. Judge Gibson explained:
The critical distinction lies with the public nature of the activity. It is when naturists by their actions impose their choice on others that generally accepted standards are offended. Under the circumstances, therefore, even if there is a constitutionally protected liberty to sunbathe nude in public, a sufficiently legitimate State interest has been demonstrated by Lower Township to justify the regulations this Ordinance contains.

[Ibid.]
We conclude that Arlene's state equal protection claim fails the balancing test. The nature of the rightappearing topless in publicis not central to the ordinary person's life enjoyment or liberty. The ordinance does not totally prevent Arlene from pursuing her "right," she can exercise it at a private beach or at a public beach elsewhere where nudity is permitted. Case law recognizes that the government has a legitimate need to protect the public from unwelcome exposure to nudity.
In sum, Judge Garofolo correctly rejected both of Arlene's equal protection challenges to the ordinance.

IV.
Arlene argues that her prosecution should have been deemed foreclosed by the "public trust doctrine." The public trust doctrine derives from Roman law; its original application was to allow all citizens to have access to tidal waters and the seashore. Matthews v. Bay Head Imp. Ass'n, 95 N.J. 306, 316-17, 471 A.2d 355, cert. denied, 469 U.S. 821, 105 S.Ct. 93, 83 L. Ed.2d 39 (1984); Borough of Neptune City v. Borough of Avon-by-the-Sea, 61 N.J. 296, 294 A.2d 47 (1972). While the doctrine was first "limited to the ancient prerogatives of navigation and fishing," our courts have extended it "to recreational uses, including bathing, swimming and other shore activities." Neptune, supra, 61 N.J. at 309, 294 A.2d 47. In so expanding the doctrine, our Supreme Court opined that the doctrine, "like all common law principles, should not be considered fixed or static, but should be molded and extended to meet changing conditions and needs of the public it was created to benefit." Ibid.
Arlene seizes upon the latter language, which she says "forbids Lower Township from prohibiting, by ordinance or otherwise, the long-established, long-accepted, unremarkable use of the area for topless or nude sunbathing," which use falls within the category of "other shore activities" protected by the doctrine.
Judge Garofolo refused to apply the doctrine, drawing a distinction between the right of access, which is what the doctrine protects, and the right to be free of restrictions on that access, which lies outside the doctrine's scope. He reasoned:
However, the public trust doctrine has never been extended to apply to any principle other than keeping beaches and tidal waters open for public fishing, navigation, swimming and recreation. Thus, Matthews held that a municipality could not exclude non-resident members of the public from its beaches. Id. at 331, 471 A.2d 355. While Ms. Vogt had access to and a right to use Higbee Beach, it does not follow that she had a right to sunbathe nude there.
In New Jersey the doctrine has been enforced mainly in the context of disapproving municipal regulations that favored *561 residents over non-residents with regard to access to and fees for using beaches and related facilities. See Capano v. Borough of Stone Harbor, 530 F.Supp. 1254, 1269 (D.N.J.1982) (summarizing New Jersey law). In Neptune, supra, 61 N.J. at 310, 294 A.2d 47, the Court cited the doctrine in overturning an ordinance that restricted to residents the sale of beach badges, which restriction resulted in a higher fee for non-residents. In Van Ness v. Borough of Deal, 78 N.J. 174, 180, 393 A.2d 571 (1978), the Court held that, under the doctrine, a municipality could not set aside part of a public beach for use by residents only. In Slocum v. Borough of Belmar, 238 N.J.Super. 179, 569 A.2d 312 (Law Div.1989), the court, adopting the reasoning of Van Ness and Neptune, invalidated beach fees that discriminated against non-residents.
But courts applying the doctrine have recognized that the doctrine does not prevent a municipality from imposing reasonable restrictions on that access and use. Thus, in Van Ness, supra, 78 N.J. at 179, 393 A.2d 571, the Court, while applying the doctrine to open a beach to non-residents, recognized that "the municipality, in the exercise of its police power and in the interest of the public health and safety, would have the right to adopt reasonable regulations as to the use and enjoyment of the beach area."
In State v. Oliver, 320 N.J.Super. 405, 415-16, 727 A.2d 491, certif. denied, 161 N.J. 332, 736 A.2d 525 (1999), the court denied that the public-trust doctrine prevented a borough from closing its beach to surfboarders during a storm. Judge Carchman reasoned:
The right of the public to enjoy that property encompassed by the doctrine is not inconsistent with the right of the sovereign, as trustee, to protect those utilizing such property. This is the essence of the government's inherent authority, if not its obligation, to act in the interest of the public safety and welfare... Such action may take the form of the legitimate exercise of police power, for example, to close beaches and preclude use of property, even that falling within the Public Trust Doctrine, when the public safety and welfare is threatened.

[Ibid.]
And the judge noted that the power to impose such use restrictions was granted by various statutes, including N.J.S.A. 40:61-22.20, which confers on shore towns the power to, "by ordinance, make and enforce rules and regulations for the government and policing of such lands [beaches], boardwalks, bathing facilities."
Thus Judge Garofolo correctly declined to accept Arlene's theory that because Higbee Beach is held in trust for the public, she was free to bare her breasts. Her freedom was subject to the township's power to impose such limits as reasonably lay within its statutory and inherent police powers.
Nor is a different conclusion warranted by the alleged fact that nudity had been tolerated at Higbee Beach for over thirty years. A municipality should not be somehow estopped by prior inaction to ban conduct it deems harmful to the public. In any event, Judge Garofolo disputed Arlene's premise, pointing out that the township had prosecuted nudists in the 1980's, as summarized by the court in Tri-State.
Affirmed.