**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1085-17T3

SHIPYARD ASSOCIATES, LP,

     Plaintiff-Respondent,

v.

CITY OF HOBOKEN,
A municipal corporation of
the State of New Jersey,

     Defendant-Appellant,

and

FUND FOR A BETTER WATERFRONT
and HUDSON TEA BUILDINGS
CONDOMINIUM ASSOCIATION, INC.,

     Defendants/Intervenors-Respondents.
_____

        Argued November 28, 2018 – Decided January 7, 2019

        Before Judges Nugent, Reisner and Mawla.

        On appeal from Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1308-16.

Christopher D. Miller argued the cause for appellant (Maraziti Falcon, LLP, attorneys; Joseph J. Maraziti, Jr., of counsel; Christopher D. Miller, on the briefs).

Kevin J. Coakley argued the cause for respondent (Connell Foley LLP, attorneys; Kevin J. Coakley, of counsel; Nicole B. Dory and Michael J. Affrunti, on the brief).

Renée W. Steinhagen argued the cause for intervenor-respondent Fund for a Better Waterfront (New Jersey Appleseed Public Interest Law Center and Eastern Environmental Law Center, attorneys; Renée W. Steinhagen and Aaron Kleinbaum, on the brief).

Craig S. Hilliard argued the cause for intervenor-respondent, Hudson Tea Buildings Condominium Association, Inc. (Stark & Stark, PC, attorneys, join in the brief of appellant City of Hoboken).

PER CURIAM

Defendant City of Hoboken (City), joined by intervenors Fund for a Better Waterfront (FBW) and Hudson Tea Buildings Condominium Association, Inc. (Hudson Tea), appeal from an October 17, 2017 order granting summary judgment in favor of plaintiff Shipyard Associates, LP (Shipyard).  Our review of the trial court's decision is de novo, using the Brill standard.  See Globe Motor Co. v. Igdalev, 225 N.J. 469, 479-80 (2016); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).  After reviewing the record in light of that

standard, we affirm, substantially for the reasons stated by the trial judge in his written opinion issued with the order. We add the following comments.

This case is the most recent in a series of lawsuits over the proposed construction of two eleven-story high-rise residential buildings on the Hoboken waterfront. The history is detailed in the trial court's opinion and in our prior opinions. See In re Shipyard Assocs. LP Waterfront Dev. Permit & Water Quality Certificate No. 0905–07–0001.2 WFD 110001, Nos. A–4873–13 and A–5004–13 (App. Div. Feb. 3, 2017), certif. denied, 230 N.J. 397, 401 (2017) (Shipyard I); Shipyard Assocs., L.P. v. Hoboken Planning Bd., Nos. A-4504-14, A-4637-14, A-4763-14 (App. Div. Aug. 2, 2017), certif. denied, 232 N.J. 106, 133, 148 (2018) (Shipyard II).[1] A brief summary will suffice here.

Shipyard obtained land use approvals to build a large residential development on waterfront land, plus some indoor tennis courts to be constructed on a pier extending into the Hudson River. After completing most of the project, Shipyard proposed to construct two additional high-rises on the pier, instead of building the tennis courts. The City and the intervenors strenuously attempted to block that portion of the project, citing the importance

---

[1] Although they do not constitute precedent for purposes of any other case, we cite our prior unpublished opinions because they are part of the history of this case. See R. 1:36-3.

A-1085-17T3

of open space and recreation opportunities, the loss of their water views, and other concerns. They opposed Shipyard's application to the Department of Environmental Protection (DEP) for a waterfront development permit, sued Shipyard for alleged violations of a developer's agreement, convinced the local planning board to refuse to hear Shipyard's site plan application for the two new high-rises, and convinced the county planning board to deny Shipyard's county-level land use application. Ultimately, those efforts failed.

In Shipyard I, we affirmed DEP's decision to issue the waterfront development permit conditioned on Shipyard extensively reinforcing the pier and implementing other safety measures. In Shipyard II, we affirmed trial court orders dismissing the litigation over the developer's agreement, and reversing the county board's decision. Most significant to the current appeal, in Shipyard II we also affirmed the trial court's decision that the planning board's unlawful refusal to hear Shipyard's application resulted in automatic approval of the preliminary and final subdivision application for the new high-rises. We affirmed the decision that the approvals were effective as of 2012, when the planning board refused to hear the application. Shipyard II (slip op. at 14-15). As a result, Shipyard has the vested rights associated with final land use

A-1085-17T3

approvals. <u>Ibid.</u>  However, due to the City's continued efforts to block the project, Shipyard has not yet been able to start construction.

In December 2013, while the above-described litigation was in progress, the City adopted two ordinances, prohibiting construction of buildings on waterfront piers, except for low-rise recreational uses.  The City characterized one enactment as a zoning ordinance (Ordinance Z-264), and the other as a flood control ordinance (Ordinance Z-263).  However, both ordinances prohibited virtually all uses in a zone where residential construction was previously permitted.  If applied to the Shipyard project, the ordinances would vitiate the final approval ordered by the trial court and affirmed by this court.

In the current litigation, Shipyard filed suit to prevent the City from enforcing the ordinances to block construction of its project.  To be clear, the issue before the trial court (as on this appeal) was not whether the ordinances

themselves were valid.[2] The issue was whether the ordinances could be retroactively applied to this project, which had final land use approval.[3]

In a thorough opinion, the trial judge determined that, regardless of the way the City chose to characterize Ordinance Z-263, in substance it operated as a zoning ordinance. The judge reasoned that the Municipal Land Use Law (MLUL) prohibited a local government from applying newly-enacted zoning ordinances, such as Z-263 and Z-264, to a project that had already received final site plan approval. See N.J.S.A. 40:55D-52(a). The judge declined to read into N.J.S.A. 40:55D-52(a) an exception for later-adopted zoning amendments designed to protect health and safety, when the Legislature included no such language in 52(a). The judge held that the public health and safety exception in

---

[2] Indeed, we have previously upheld ordinances banning construction close to the water's edge. See McGovern v. Bor. of Harvey Cedars, 401 N.J. Super. 136, 147-48 (App. Div. 2008). There was no dispute that the ordinances in this case were of a general type recommended by DEP to address potential flooding issues in the wake of Superstorm Sandy. However, DEP defended the issuance of Shipyard's waterfront development permit on appeal, after Sandy occurred. In affirming the issuance of the permit, we agreed that post-Sandy developments did not require DEP to suspend or revoke the permit. Shipyard I (slip op. at 21-22).

[3] Illustrating the narrowness of the issue, at oral argument counsel confirmed that there are no other developments approved for construction on waterfront piers in Hoboken. In that respect, the Shipyard project is sui generis in Hoboken, and this opinion is not intended as precedent with respect to any as-yet-unapproved developments.

A-1085-17T3

N.J.S.A. 40:55D-10.5 (the time of application rule) did not apply here, because that section addresses pending applications, not applications that have already received final approval.

The judge considered that DEP, the Federal Emergency Management Agency (FEMA), and the Army Corps of Engineers had all reviewed the Shipyard project and none had concluded that the project was unsafe. The judge noted that DEP issued a waterfront development permit despite public comments "regarding flooding and safety." He also noted that DEP "regulations . . . have specific criteria for building a structure on a pier or platform and the [Shipyard] [p]roject was deemed to comply with those criteria."

We conclude that the trial judge reached the correct result, and little further discussion is required. In affirming, we add one caveat. This case does not require us to decide whether or to what extent, under some circumstances, a zoning ordinance affecting health and safety might be applied to modify a previously-granted final approval. That is not what Hoboken proposes here. Rather, Hoboken seeks to retroactively apply ordinances that completely change the permitted uses in the zone. If applied here, the ordinances would require the revocation of a previously-granted final approval, a result contrary to the plain wording of N.J.S.A. 40:55D-52(a).

Moreover, even N.J.S.A. 40:55D-49(a), on which appellants rely so heavily, does not support the far-reaching exception for which they argue. Section 49(a) states in pertinent part: "nothing herein shall be construed to prevent the municipality from modifying by ordinance such general terms and conditions of preliminary approval as relate to public health and safety." (Emphasis added). The term "modifying" suggests a change, revision, or tweak to the "general terms and conditions" of a preliminary approval, not the revocation of the approval in its entirety. Hence, even if section 52(a) were construed as implicitly including the exceptions set forth in section 49(a), appellants would not prevail in this case.

We agree with Shipyard that appellants misplace reliance on New Jersey Shore Builders Association v. Township of Jackson, 199 N.J. 38 (2009), and Sparroween, LLC v. Township of West Caldwell, 452 N.J. Super. 329 (App. Div. 2017). Jackson approved the enforcement of a general municipal ordinance concerning the removal of trees. The Court concluded that the ordinance was a "generic environmental regulation" that was "not subject to the specific limits in the MLUL." 199 N.J. at 54. Similarly, Sparroween involved an ordinance adopted by a municipal board of health, limiting the smoking of tobacco products inside tobacco retail stores. We concluded that the smoking ordinance

was a health regulation and not a "land use ordinance." 452 N.J. Super. at 339. Neither case involved an ordinance that completely changed the permitted use of property in a zone and would have required revocation of a previously-granted final site plan approval.

Appellants' arguments on this appeal are without sufficient merit to warrant additional discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1085-17T3